## HOUGHTON *v.* MEYER, POSTMASTER GENERAL.[1]

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 49. Argued November 12, 1907.—Decided January 20, 1908.

While the restraining order authorized by § 718, Rev. Stat., is a species of temporary injunction it is only authorized until a pending motion for a temporary injunction can be disposed of.

The undertaking given to obtain a restraining order under § 718, Rev. Stat. must be construed in the light of that section and it necessarily is superseded by an order or decree granting an injunction and thereupon expires by its own limitation, notwithstanding such order or decree may subsequently be reversed.

The givers of an undertaking cannot be held for any period not covered thereby on the conjecture that they would have given a new undertaking had one been required. Their liability must be determined on the one actually given.

In this case the obligors on the undertaking obtained an order restraining the Postmaster General from refusing to transmit their matter at second class rates. The motion on the order was not brought on but on the hearing on the merits the trial court, by decree, granted a permanent injunction. This decree was reversed. In an action brought by the

---

[1] Original docket title: *Houghton et al.* v. *George B. Cortelyou, Postmaster General.* By order of the court George Von L. Meyer, Postmaster General, was substituted as appellee.

Postmaster General, on the undertaking, claiming damages for entire period until final reversal of decree, *held* that:

The liability on the undertaking was limited to the difference in postage on matter mailed between the date of the restraining order and the entry of the decree of the trial court which superseded the restraining order.

This was not a case in which the parties should be relieved from the obligation of the undertaking for damages during the period for which it was in force. *Russell* v. *Farley*, 105 U. S. 433, distinguished.

27 App. D. C. 188, modified and affirmed.

THE facts are stated in the opinion.

*Mr. Holmes Conrad* and *Mr. William S. Hall* for appellants:

In the United States courts, where an injunction is granted, neither law nor equity gives any remedy in damages to the defendant, because it is regarded that the injunction flows from the judgment of the court, and not from the plaintiff. Where an injunction is granted and afterwards dissolved, there is no power to award damages unless bond or undertaking has been required upon the issue of the injunction. *Russell* v. *Farley*, 105 U. S. 433. Without a bond no damages can be recovered at all unless a case of malicious prosecution is made out. *Meyers* v. *Block*, 120 U. S. 206, 211.

In this case there can be no claim of malicious prosecution, as Mr. Justice Hagner, upon final hearing, decided that the claim of the plaintiff was well founded and ordered an injunction to issue. *Crescent Live Stock Co.* v. *Butchers' Union*, 120 U. S. 141, 158.

When a bond has been given, it is within the power of the trial court to decide whether any damages should be recovered. *Russell* v. *Farley*, 105 U. S. 433, 446.

In this case the preliminary injunction or restraining order was superseded by the decree made at the hearing of the cause, and with that decision the office and sole function of the temporary injunction ceased and was no longer operative.

The preliminary injunction or restraining order was by its terms to continue only "until further order." It was never dissolved. It expired by its own limitation. *Sweeney* v. *Hanley*, 126 Fed. Rep. 97, 99.

The injunction which was dissolved was the injunction of March 10, 1903, for which no bond was ever given or asked for. Had the defendant desired security, the matter should have been brought to the attention of the court. *Cayuga Bridge Co.* v. *Magee,* 2 Paige (N. Y.), 116.

The court cannot impose on the plaintiffs any undertaking which they have not given. It only makes the undertaking a condition of granting the injunction. If the plaintiffs refuse to give it, the court can refuse the injunction, but it cannot compel the plaintiffs to give an undertaking. *Tucker* v. *New Brunswick Trading Co.,* 44 Ch. Div. 249.

An undertaking given by plaintiff on the issuing of a restraining order may be continued in effect after the hearing, with the consent of the plaintiff, but not otherwise. *Novello* v. *James,* 5 De G. M. & G. 876.

*Mr. Henry H. Glassie,* Special Assistant to the Attorney General, for appellee:

Damages should be assessed for the entire period during which the injunction remained in force, for so long as the injunction remained in operation the undertaking remained in force as a means of indemnity. *Dodge* v. *Cohen,* 14 App. D. C. 582; *Hamilton* v. *State, use of Hardesty,* 32 Maryland, 348, 353.

Complainant's injunctions, being dissolved for want of right and equity to sustain them, are conclusively determined to have been wrongfully and inequitably sued out.

Every injunction which upon the same state of facts is dissolved, is inequitably granted, because if the complainant had been equitably entitled to the relief it would have been impossible that the bill should have been dismissed or his injunction denied. On this point the decree that complainant's bill must be dismissed is of course conclusive. *Oelrichs* v. *Spain,* 15 Wall. 211, 228, 229; *Hopkins* v. *State,* 53 Maryland, 502, 517; *Sipe* v. *Holladay,* 62 Indiana, 4, 9.

It is immaterial whether the injunction was granted by mistake of law or upon a misapprehension or misstatements

of the facts.   The defendant is entitled to the protection of
the undertaking whenever and for whatever reason the com-
plainant actually fails on the merits.   *Griffith* v. *Blake*, L. R.
27 Ch. Div. 474, 476, 477; *Hunt* v. *Hunt*, 54 L. J. Ch. (N. S.)
289, 290.   See also *Russell* v. *Farley*, 105 U. S. 433, 438, 439;
*Cox* v. *Taylor's Administrator*, 10 B. Mon. 17, 21, 22; *Winslow*
v. *Mulcahy*, 35 S. W. Rep. 762, 763; *N. Y. & L. B. R. R.* v.
*Dennis*, 40 N. J. L. 340.

There is absolutely no equitable consideration in this case
which will relieve the complainants from the obligation im-
posed by their own undertaking.   No new facts have super-
vened which were not known to the complainants at the time.
In each case complainants knew that the result of granting
the injunction would be the very state of things that has hap-
pened—that the Postmaster General would be prevented from
getting the full rate and that they would gain and he would
lose the difference.   The damages which have resulted are not
only the natural and inevitable result of their action, but the
result actually in their contemplation and which they de-
liberately intended to produce.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here by appeal from the Court of Appeals of the
District of Columbia.   The case originated in an action brought
against the then Postmaster General (Mr. Payne) to compel
him to enter and transmit certain publications of the com-
plainants, Houghton, Mifflin & Company, as second class mat-
ter instead of third class as ruled by the Postmaster General;
and the bill prayed an injunction restraining the Postmaster
General from refusing to transmit them at second class matter
rates.   A restraining order was issued upon the filing of the
bill on May 31, 1902, in the following terms:

"Upon the complainant filing undertaking, as required by
equity rule 42, the defendant will be hereby restrained as
prayed in the within-mentioned bill until further order, to

be made, if at all, after a hearing, which is fixed for the 16th day of June at ten o'clock A. M., 1902, of which take notice.

"By the court:

A. B. HAGNER, *Justice.*"

An undertaking was given in the following terms:

"George H. Mifflin, one of the complainants, and the American Surety Company of New York, surety, hereby undertake to make good to the defendants all damages by him suffered or sustained by reason of wrongfully and inequitably suing out the injunction in the above-entitled cause, and stipulate that the damages may be ascertained in such manner as the justice shall direct, and that, on dissolving the injunction, he may give judgment thereon against the principal and sureties for said damages in the decree itself dissolving the injunction.

"GEORGE H. MIFFLIN.

"THE AMERICAN SURETY COMPANY, NEW YORK.

"By JNO. S. LOUD.

"Approved 4 June, 1902.  A. B. HAGNER."

No further hearing was had upon the application for a temporary injunction, and on March 10, 1903, the case was heard on the merits and the following injunction awarded:

"This cause, coming on to be heard upon the bill and the exhibits filed therewith, and on the papers filed in the cause and the proceedings had therein, was argued by counsel. On consideration thereof it is this 10th day of March, 1903, adjudged, ordered, and decreed—

"(1.)  That the complainants are entitled to have their publications entitled 'Riverside Literature Series' received and transmitted through the mails as mailable matter of the second class, as defined by the act of Congress approved March 3, 1879.

"(2.)  That the Postmaster General be, and he is hereby, perpetually restrained from enforcing and continuing the can-

cellation of the certificate of entry set forth in paragraph six of said bill; and from refusing to receive said publication and transmit the same through the mails as mailable matter of the second class, in accordance with the provisions of said act of Congress approved March 3, 1879, and from denying to the complainants the receipt, entry, and transmission through the mails of their publication entitled 'Riverside Literature Series' as mailable matter of the second class, as defined by the act of Congress approved March 3, 1879."

An appeal was taken to the Court of Appeals of the District of Columbia, and on June 5, 1903, the decree of the Supreme Court was reversed and the case remanded to the court below, with directions to dismiss the bill. 22 App. D. C. 234. From that decree an appeal was taken to this court, and the decree of the District Court of Appeals was affirmed on April 11, 1904. 194 U. S. 88.

Upon receipt of a mandate of this court the District Court of Appeals issued its mandate, ordering the court below to dismiss the bill. The Postmaster General moved the court to enter a decree upon the mandate of the District Court of Appeals, to dismiss the bill dissolving the injunction, and ascertain the damages by reason of the violation thereof. The District Supreme Court entered a decree setting aside its original decree, and dismissed the bill, and dissolved the injunction theretofore granted, but being of opinion that, as matter of law, the complainants and sureties on the injunction bond given in the case were not liable to damages thereon, the motion for ascertainment of damages upon such undertaking was overruled and denied, and the injunction undertaking cancelled and annulled.

From the part of the decree refusing to assess damages the Postmaster General, Mr. Cortelyou having succeeded Mr. Payne, appealed to the District Court of Appeals, where the order of the court below was reversed, and a decree directed against the appellant and the surety on the injunction bond for the sum of $6,880.86, the amount with interest stipulated as the

difference between postage due at third class rate and that paid as second class rate "between the date of the filing of the injunction herein and June 16, 1904, when such mailing at the second class rate was discontinued." 27 App. D. C. 188. Thereupon appeal was taken to this court.

It is the contention of the appellants that the original undertaking being entered only for a temporary purpose, had spent its force, and that there is no liability thereon, notwithstanding the fact that the original decree granting a permanent injunction was reversed by the District Court of Appeals, which judgment was affirmed in this court.

The contention of the appellee is that the damages sustained by the Postmaster General during the time pending this action was secured by the bond, and recovery may be had for the damages sustained, or, if not for the full amount, at least for the time from the granting of the restraining order until the final decree in the court of original jurisdiction.

The determination of the question involved depends upon the nature and character of the undertaking given. The restraining order issued in the case was authorized by § 718 of the Revised Statutes of the United States, which is as follows:

"Whenever notice is given of a motion for an injunction out of a Circuit or District Court, the court or judge thereof may, if there appears to be danger of irreparable injury from delay, grant an order restraining the act sought to be enjoined until the decision upon the motion; and such order may be granted with or without security, in the discretion of the court or judge." Rev. Stat. § 718.

Under this section, originally passed June 1, 1872 (§ 7, c. 255, 17 Stat. 196, 197), a restraining order with features distinguishing it from an interlocutory injunction was introduced into the statutory law. In the prior act of Congress of March 3, 1793, c. 22, 1 Stat. 334, 335, it was provided in § 5: "Nor shall a writ of injunction be granted in any case without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving for the same."

By force of § 718 a judge may grant a restraining order in
case it appears to him there is danger of irreparable injury,
to be in force "until the decision upon the motion" for tempo-
rary injunction.  Thus by its very terms the section (718) does
not deal with temporary injunctions, concerning which power
is given in other sections of the statutes, but is intended to
give power to preserve the *status quo* when there is danger of
irreparable injury · from delay in giving the notice required
by Equity Rule 55, governing the issue of injunctions.  While
the statutory restraining order is a species of· temporary injunc-
tion, it is only authorized, as § 718 imports by its terms, until
the pending motion for a temporary injunction can be heard
and decided.  *Yuengling* v. *Johnson*, 1 Hughes, 607; *S. C.*, 30
Fed. Cases, 866. Case No. 18195; *Barstow* v. *Becket* 110 Fed.
Rep. 826, 827; *North American Land and Timber Co.* v. *Wat-
kins*, 109 Fed. Rep. 101, 106; *Worth Mfg. Co.* v. *Bingham*, 116
Fed. Rep. 785, 789.

And the same view has been recognized in other jurisdictions
having similar statutory provisions.  "A temporary restrain·
ing order is distinguished from an interlocutory injunction in
that it is ordinarily granted merely pending the hearing of a
motion for a temporary injunction and its life ceases with the
disposition of that motion and without further order of the
court, while, as we have seen, an interlocutory injunction is
usually granted until the coming in of the answer or until the
final hearing of the cause and stands as a binding restraint until
rescinded by the further action of the court."  1 High on In-
junctions (4th ed.), § 3.

Turning from a consideration of· the authority conferred to
the terms of the order, it will be seen that the judge acted
under the terms of § 718.  For the order of restraint is "until
further order, to be made, if at all, after a hearing, which is
fixed for the 16th day of June, at ten o'clock A. M., 1902, of
which take notice."  This is the order of which the defendant
had notice and concerning which indemnity was required and
given in the bond now in suit.

As we have noticed, no further undertaking was required of Houghton, Mifflin & Company after the restraining order issued in its favor. The Court of Appeals of the District said, 27 App. D. C. 195:

"But we do not think the bond ceased to be in force after the decree was entered making the injunction perpetual. The parties, by their actions, treated it as though it continued to apply. The appellant would, had any question been raised, have asked for a new bond, in which event the appellees doubtless would have conceded that the bond remained in force. When the main case was before this court, and later was taken to the United States Supreme Court, it was considered that the original undertaking was in force or a new one would have been required,—one other than the supersedeas bond then given."

But we do not think the case can be decided upon conjecture as to what bonds might have been required. We must determine the case upon the liability of the principals and sureties on the bond which was actually given.

When the parties gave this undertaking, the court, exercising its discretion, had required that the restraining order should be upon condition that bond be given to secure the defendant against loss because of this temporary restraint.

It is true that the restraining order was, by its terms, to be in force until "further order," to be made, if at all, after hearing. Neither party brought on for hearing the pending motion for a temporary injunction. When the further order was made nothing was said of the restraining order. A new and permanent injunction in favor of the plaintiffs was granted. This decree necessarily superseded the restraining order, and it expired by the limitation contained in its terms, and there was no further liability on the bond, given only to secure that order.

It is further contended by the appellants that they should be relieved from all liability on this bond, upon the principles laid down in *Russell* v. *Farley*, 105 U. S. 433. In that case the

equity practice in the courts of the United States concerning security for injunctions was elaborately discussed by Mr. Justice Bradley, speaking for the court. It was held that the exercise of discretion involved in the decision of the court of original jurisdiction, in awarding or withholding damages, should only be reversed in clear cases. And examining the procedure in the case then in hand, with a view to ascertaining whether injustice had been done, the fact is shown that the injunction secured by the obligation given in that case had never been entirely dissolved; that it had never been decided that the complainant was not entitled to it, at least as to a portion of the property claimed by the parties suing out the injunction, and it turned out on the final hearing that as to more than one-half of the claim the injunction was properly issued. In course of the discussion the learned justice says, p. 442:

"When the pledge [deposited by order of court] is no longer required for the purposes of justice, the court must have the power to release it, and leave the parties to the ordinary remedies given by the law to litigants *inter sese*. Where the fund is security for a debt or a balance of account, or other money demand, this would rarely be allowable; but in many other cases it might not infrequently occur that injustice would result from keeping property impounded in the court. On general principles the same reason applies where, instead of a pledge of money or property, a party is required to give bond to answer the damage which the adverse party may sustain by the action of the court. In the course of the cause, or at the final hearing, it may manifestly appear that such an extraordinary security ought not to be retained as a basis of further litigation between the parties; that the suit has been fairly and honestly pursued or defended by the party who was required to enter into the undertaking, and that it would be inequitable to subject him to any other liability than that which the law imposes in ordinary cases. In such a case it would be a perversion, rather than a furtherance, of justice

'to deny to the court the power to supersede the stipulation imposed."

In the present case the court of original jurisdiction, the Supreme Court of the District, refused to assess damages upon the injunction bond, for what reason the record does not disclose. The District Court of Appeals, as we have seen, assessed damages for the entire period, during which it held the injunction to be in force. We do not think this case comes within the class outlined in *Russell* v. *Farley*, wherein the order of the trial court ought not to be disturbed upon principles of equity and in view of the superior knowledge of that court of the conduct of the parties in the course of the litigation.

In this case the Government and the appellants were in controversy as to the rate of postage to be charged upon a certain class of publications sent through the mail by the appellants. It is true that the department's rulings for some years had been in favor of the contention of the appellants as to the class to which this mailable matter belonged. When the Postmaster General ruled to the contrary, and correctly, as has now been held in the District Court of Appeals and in this court, the publishers applied to the court for an injunction to continue them in their original right to receive this lower rate of postage pending the litigation which they had begun, with a view to testing the right of the Government to make this demand. The court entertained the suit and awarded a restraining order, but upon the condition that if the publishers continued to receive the lower rate postage for which they contended, notwithstanding the ruling of the Postmaster General, the Government was to be indemnified against loss should it turn out that its contention was right and that of the complainants wrong. The publishers accepted this condition, and gave the bond to secure their right to continue sending the mailable matter in controversy at the old rate, pending the further order of the court.

As a result of the final decision in this court, it turned out that the Postmaster General was right, and that the Govern-

ment was justly entitled to the additional rate of postage as ruled by the Postmaster General. The result of the decision established not only the right of the Government to receive the additional postage, pending the controversy, but also established the fact that the publishers had received a very considerable amount of service from the Government in carrying the publications through the mails at a rate less than it was. entitled to charge.

We do not perceive, in this condition of affairs, any room for the application of the doctrine laid down in *Russell* v. *Farley*, which permits a court to relieve from liability on an injunction bond. The result of this litigation leaves no doubt as to the rights of the parties, and the Government's right to avail itself of the security given to secure payment of the postage which it was legally entitled to charge.

It is not necessary for us to decide whether further and other security might not have been required under Equity Rule 93, or otherwise, as a condition of continuing the injunction after final judgment. What we determine is that this undertaking was authorized and given in pursuance of § 718, Rev. Stat., and should be construed accordingly. The District Court of Appeals should have sustained the order of the Supreme Court of the District, declining to assess any damages on the bond, except for the period from the time the bond was approved until March 10, 1903, the date of the decree in the court of original jurisdiction.

The judgment of the Court of Appeals giving damages for the entire period of the litigation and until the legal rate of postage was paid by appellants should be modified so as to include only damages for the period covered by the restraining order, as above stated, and, as so modified,

*Affirmed, costs in this court to be equally divided.*