BUDDY SYSTEMS, INC., a California Corporation, Plaintiff-Appellee,

v.

EXER-GENIE, INC., a corporation, and E. E. Holkesvick, Defendants-Appellants.

No. 74–1639.

United States Court of Appeals, Ninth Circuit.

Sept. 27, 1976.

Rehearing and Rehearing En Banc Denied Nov. 4, 1976.

Charles E. Wills (argued), of Wills, Green & Mueth, Los Angeles, Cal., for defendants-appellants.

V. J. McAlpin (argued), of McAlpin, Doonan & Seese, Covina, Cal., for plaintiff-appellee.

Before ELY and WALLACE, Circuit Judges, and RENFREW,* District Judge.

* Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

WALLACE, Circuit Judge:

■ Exer-Genie, Inc., and Holkesvick (Exer-Genie) appeal from a judgment awarding damages to Buddy Systems, Inc., for the wrongful issuance of a preliminary injunction obtained by Exer-Genie in a prior action. The issue we must decide is whether a district court may entertain jurisdiction pursuant to 28 U.S.C. § 1352[1] over a suit on an injunction bond after the bond has been exonerated. We hold that the district court was without jurisdiction to hear this suit and therefore reverse.

I

In 1968 Exer-Genie brought suit against Buddy Systems and several other defendants for infringement of a patent used in the manufacture of an exercise device. Exer-Genie moved for a preliminary injunction in order to restrain Buddy Systems from making or selling a competitive exercise device. The preliminary injunction was granted on the condition that Exer-Genie post security in the amount of $100,000.[2] Exer-Genie filed a certificate of deposit and the district court issued a writ of injunction. Buddy Systems did not appeal from the issuance of the preliminary injunction.

After a trial on the merits, the district judge found that Exer-Genie's patent was valid and had been infringed and therefore made the preliminary injunction permanent. He concluded that "[t]he preliminary injunction was lawfully and regularly issued by the Court and therefore the plaintiffs [pursuant to their request] are entitled to have exonerated the security which they posted."

Buddy Systems objected to the exoneration of the security before the time for appeal had expired. The district judge afforded Buddy Systems an opportunity to submit in writing any authority it might have in support of its objection, but Buddy Systems failed to do so. The final judgment ordered the injunction bond exonerated.

On appeal, we reversed the district court's judgment and held that Exer-Genie's patents were invalid. *Exer-Genie, Inc. v. McDonald,* 453 F.2d 132 (9th Cir. 1971), *cert. denied,* 405 U.S. 1075, 92 S.Ct. 1498, 31 L.Ed.2d 809 (1972). Buddy Systems did not challenge the exoneration of the bond as premature and erroneous and we did not reach that issue on appeal.

After our decision, Buddy Systems filed the present suit to recover damages for the wrongful issuance of a preliminary injunction, invoking 28 U.S.C. § 1352 as the sole jurisdictional basis for its suit. It then moved to compel Exer-Genie to redeposit the security which had been released earlier. The motion was denied and the trial proceeded with no bond in existence. A judgment was entered awarding $35,000 damages to Buddy Systems.

Exer-Genie raises several issues in its appeal from this second judgment. We need consider only one: whether the district court had subject matter jurisdiction over the suit pursuant to section 1352. Since we answer this question in the negative, we need not reach the remaining issues.

Section 1352 grants jurisdiction to hear an "action on a bond" executed pursuant to Rule 65(c), Fed.R.Civ.P. (security required for issuance of preliminary injunction). In this case, the simple fact is that the bond had been exonerated; therefore, there was no bond upon which an action could be brought. To overcome what appears to be obvious, the district court employed a fiction. It concluded that a bond and the security are distinguishable and that here

---

1. The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States.

 28 U.S.C. § 1352.

2. The district court's order required that:

 Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the plaintiffs herein shall give security in the sum. of One Hundred Thousand Dollars ($100,000.00), by a corporate surety bond, or by a treasury bond or a certificate of deposit payable to Clerk, United States District Court, for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined or restrained.

the bond continued in existence after the security was discharged upon exoneration. Buddy Systems adds a different theory on appeal. It concludes that once a bond is executed, any district court may later entertain jurisdiction over an action for wrongful issuance of an injunction, regardless whether the bond has been exonerated. Neither theory supports jurisdiction.

## II

The district court reasoned that a bond has two separate aspects: it involves (1) a promise to make the defendant whole in case the preliminary injunction is improperly granted and damages result and (2) the deposit of security from which payment for any damages will be obtained. The promise continues to be enforceable even after the security is exonerated, the court argued, and a suit on the promise is a suit "on a bond" within he meaning of section 1352. This theory has a superficial plausibility, but it finds little support in history or authority.

While we hesitate to resurrect ancient law, common law history is instructive. The practice of giving tangible items as security, called "gage," in order to acquire credit arose before any consensual theory of contract obligation emerged. The creditor took possession of the gage and retained it until he was repaid. But there was no underlying duty on the part of the debtor— if he failed to pay, the creditor held the security, but had no action on the debt. A surety was referred to as a "pledge," and was at first literally "an animated gage . . . delivered over to slavery but subject to redemption." 2 F. Pollock & F. Maitland, The History of English Law 185–86 (2d ed. 1899).

Although these devices were used for a number of purposes, they also served a role very similar to that of the Rule 65 injunction bond involved in this case. For example, at early common law the plaintiff in a replevin action against a distrainor was re-

quired to give "gage and pledge"—*i. e.*, a surety's bond. *Id.* at 577; *see* Dobbs, *Should Security be Required as a Pre-Condition to Provisional Injunctive Relief?*, 52 N.Car.L.Rev. 1091, 1093 (1974).

At later common law, a bond was a sealed and delivered instrument binding the obligor to pay a sum of money. 1A A. Corbin, Contracts, § 258, at 455 (1963). It did not need to be supported by consideration. 12 Halsbury's Laws of England § 1400 (4th ed. 1975). While common law bonds may be used for many purposes, including security for the performance of independent obligations, *see id.* § 1387, the term "bond" does not refer to the duty whose performance is secured, but only to the security itself. *See id.* § 1385.[3]

■ Thus even if a duty independent of the security posted under Rule 65 can be implied, the district court's theory that a suit to enforce that duty is an action "on a bond" finds no justification in common law bond history. This was the construction given to section 1352 in *United Bonding Insurance Co. v. Alexander,* 413 F.2d 1025, 1026 (5th Cir. 1969), where the court held that an action by the obligor on a fidelity bond against the principal for breach of a duty implied by the bond was not a suit "on a bond" within the meaning of section 1352. Thus we conclude that there is no jurisdiction under section 1352 over a suit on any alleged promise independent of the security instrument.

■ But more importantly, no underlying duty to recompense the victim of wrongful provisional relief independent of the security instrument may be implied. It is a well-settled rule that there can be no recovery for damages sustained by a wrongful issuance of a preliminary injunction in the absence of a bond, *Russell v. Farley,* 105 U.S. 433, 437, 26 L.Ed. 1060 (1881); *Benz v. Compania Naviera Hidalgo, S.A.,* 205 F.2d 944, 947–48 (9th Cir.) (on petition for rehearing), *cert. denied,* 346

---

3. There is one exception. Where a bond (specialty) is coextensive with a simple contract debt secured by it, the contract debt is deemed to have merged into the specialty. 12 Halsbury's Laws of England § 1411 (4th ed. 1975).

U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389 (1953), unless the defendant sues for malicious prosecution or on a theory of unjust enrichment, *Northern Oil Co. v. Socony Mobil Oil Co.,* 347 F.2d 81, 83 (2d Cir. 1965); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2973, at 652 (1973); *see* Note, *Greenwood County v. Duke Power Co.,* 7 U.Chi.L.Rev. 382 (1940). If a bond is posted, liability is limited by the terms of the bond or the order of the court that required the posting. *See* 11 Wright & Miller, *supra,* § 2973, at 652; Comment, *The Triggering of Liability on Injunction Bonds,* 52 N.Car. L.Rev. 1252, 1258 (1974).[4] The district court's theory that a duty in addition to those created by the court's order may be implied is directly opposed to these settled rules.[5]

Furthermore, we do not find any special circumstances in this case to justify a departure from these settled rules. The district judge conditioned the preliminary injunction "[u]pon the giving of security" in the form of "a corporate surety bond, or by a treasury bond or a certificate of deposit payable to Clerk." Exer-Genie submitted a

certificate of deposit. There was nothing said about any independent promise. After trial, the district court ordered that the security be returned to Exer-Genie without any qualification or condition at all. The court specifically rejected Buddy Systems' plea that the security be retained pending appeal. This order completely discharged the relationship the district court had previously established; there was nothing left upon which Buddy Systems could bring this action. *See* 11 Wright & Miller, *supra,* § 2973, at 652–53.

Neither do we find any support for the district court's theory in the language of Rules 65(c)[6] and 65.1.[7] The rules simply refer to "the giving of security" "in the form of a bond or stipulation or other undertaking." The statutory predecessors of Rule 65(c) likewise refer solely to a security device.[8] Thus we conclude that implied promise upon which the district court based liability is not a "bond" within the meaning of section 1352 and more importantly that no such promise is implied by a Rule 65 order to post security. Once the security is returned to the plaintiff there can no long-

---

**4.** For example, liability on the bond is not diminished when parties consent to a modification of a preliminary injunction which has the effect of reducing the potential liability on the bond, even where the surety has not been notified of the agreement. *Future Fashions, Inc. v. American Surety Co.,* 58 F.Supp. 36, 37–38 (S.D.N.Y.1944).

**5.** A few states do allow recovery for the erroneous but non-malicious issue of an injunction in the absence of a bond or in excess of its limits. *See* Note, *Interlocutory Injunctions and the Injunction Bond,* 73 Harv.L.Rev. 333, 344–46 (1959).

**6.** Rule 65(c) provides in part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. . .

The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.

Fed.R.Civ.P. 65(c).

**7.** Rule 65.1 provides in part:

Whenever . . . security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety['s] . . . liability on the bond or undertaking . . . may be enforced on motion without the necessity of an independent action.

Fed.R.Civ.P. 65.1.

**8.** Rule 65(c) borrows substantially the same language used in Section 382 of the Judicial Code of 1926, 44 Stat., pt. 1, 909, which in turn employed the language of section 18 of the Clayton Act, ch. 323, 38 Stat. 738 (1914):

[N]o restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby.

Section 17 of the Clayton Act, ch. 323, 38 Stat. 737 (1914), had repealed section 263 of the Judiciary Act of 1911, ch. 231, 36 Stat. 1162, which had provided that a preliminary injunction "may be granted with or without security, in the discretion of the court or judge." A predecessor statute had used nearly identical language. Act of June 1, 1872, ch. 255, § 7, 17 Stat. 197.

er be a section 1352 action "on a bond." To the extent that *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097, 1100–01 (10th Cir. 1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970), cited by Buddy Systems, can be read as supporting the district court's theory, we disagree with its holding.

### III

Buddy Systems does not appear to embrace outright the district court's theory that a bond is to be distinguished from a security which is released. Rather, Buddy Systems' argument is a variation on that theory; *i. e.,* once a bond has been executed and has established a basis for liability, subsequent exoneration will not serve to oust all federal courts of jurisdiction to determine liability.

Thus, under this second approach, the liability, once established, is subsequently independent of the status of the bond, even though there could have been no liability without the initial execution of a bond. *See Atomic Oil Co. v. Bardahl Oil Co., supra,* 419 F.2d at 1101; *but see Silvers v. TTC Industries, Inc.,* 484 F.2d 194, 199 (6th Cir. 1973). The argument appears to be based upon the avoidance of a paradox: adoption of a contrary result would mean that federal jurisdiction could be abrogated unilaterally by an erroneous ruling of a single federal court. This concern is completely unfounded, however.

 Buddy Systems had the opportunity to raise the alleged wrongful exoneration on its appeal from the permanent injunction. *Exer-Genie, Inc. v. McDonald, su-*

*pra.* If Buddy Systems had raised this issue and succeeded in having the exoneration reversed as being premature and erroneous, it could have moved the enjoining court for recovery on the reinstated liability under Rule 65.1, Fed.R.Civ.P., *Northeast Airlines, Inc. v. Nationwide Charters & Conventions, Inc.,* 413 F.2d 335, 338 (1st Cir. 1969),[9] or brought an independent action on the reinstated liability in state court or federal court under 28 U.S.C. §§ 1331 or 1352. Thus our jurisdiction is not abrogated by the premature exoneration of the bond by the district court, but by Buddy Systems' own failure to take advantage of the available appellate remedies to have the alleged erroneous ruling reversed.[10]

We are not unmindful of the underlying equities in this case. Exer-Genie sought, and was the beneficiary of, the extraordinary equitable powers of a district court. Having prevailed at trial, it then moved immediately for an order exonerating its bond, thereby depriving Buddy Systems of the protection the injunction bond is intended to provide. Exer-Genie's haste in seeking the release of its security, and its subsequent refusal to reinstate the bond voluntarily or to acknowledge its liability under it, do not enhance its position. But we should not make an exception to what would otherwise be a simple and reasonable rule in order to save jurisdiction for party blunders if it will result in needless and unfortunate side effects.

We are here dealing with that exceptional case where a party has been wrongfully enjoined, the district court erroneously has exonerated the bond and the party, without

9. After reversal of the issuance of the permanent injunction, but before initiating this section 1352 action, Buddy Systems did move the issuing district court to reinstate the bond under Rule 65.1, but that court refused. The propriety of that ruling is not before us.

10. The exoneration was not implicitly reversed by the reversal of the permanent injunction on direct appeal. We recognize that such a reversal provides a basis for finding the preliminary injunction to have been wrongfully issued. *Houghton v. Meyer,* 208 U.S. 149, 159–60, 28 S.Ct. 234, 52 L.Ed. 432 (1908). However, wrongful issuance is merely one element of a

cause of action on an injunction bond. *Russell v. Farley, supra,* 105 U.S. at 441–46; *Lawrence v. St. Louis-S.F. Ry.,* 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282 (1929); *Page Communications Eng'rs, Inc. v. Froehlke,* 155 U.S.App.D.C. 1, 475 F.2d 994 (1973). The bond is still needed. There also must be damages shown. If the enjoined party suffers no monetary damage, he may not recover on a bond anyway and has no standing to appeal an alleged wrongful exoneration. If there are damages, it is incumbent upon the enjoined party to raise the wrongful exoneration issue on appeal.

excuse, has failed to appeal this error. Rather than follow general principles of finality, Buddy Systems would have us sanction a collateral attack on a routine district court order by announcing a new jurisdictional rule for our circuit. But at what cost? Although here Exer-Genie secured its own bond by submitting a certificate of deposit, Buddy Systems' approach would be equally applicable to the case where the plaintiff has posted a surety bond. If we adopted its approach, sureties would be uncertain as to the termination of their liability and bonding costs could increase to reflect this uncertainty. *Cf. Northern Trust Co. v. Edenborn,* 39 F.Supp. 607 (W.D.La.1941).[11] An increase in bonding costs would have a deterrent effect on the meritorious claims of indigents who seek provisional injunctive relief under Rule 65. *See* Dobbs, *Provisional Injunctive Relief, supra,* 52 N.Car.L.Rev. at 1112–17; Blood, *Injunction Bonds: Equal Protection for the Indigent,* 11 S.Tex.L.J. 16 (1969). District courts may well react to higher bond costs by exercising discretion to require bonds of lower amounts.[12] Thus, the net result of adopting a pro-recovery approach here could well be to subject more defendants to the prospect of inadequate relief for wrongfully issued injunctions.

In recognition of the problems likely to be generated by adopting the questionable jurisdictional exception advocated by Buddy Systems, we would want sound authority to chart the course. But *Atomic Oil Co. v. Bardahl Oil Co., supra,* does not provide us with an illumined path to follow. There is no discussion whatsoever in *Atomic Oil* of the court's source of jurisdiction. The defendant had obtained recovery in an independent action on two injunction bonds, one of which had been exonerated. The fact that recovery was sought on both bonds, however, is not decisive on the issue of section 1352 jurisdiction over the action on the exonerated bond. Assuming the court had jurisdiction over the claim on the existing bond pursuant to section 1352, it might have decided the claim on the exonerated bond on a theory of pendent jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). To the extent jurisdiction of the latter claim was based on section 1352, we believe, as noted earlier, that *Atomic Oil* is wrong.

No other case can be cited in support of Buddy Systems' position. Cases which have specifically entertained jurisdiction under section 1352 all involve suits on existing security instruments. *E. g., Hays Livestock Commission Co. v. Maly Livestock Commission Co.,* 498 F.2d 925, 932 (10th Cir. 1974); *United States v. Western Casualty & Surety Co.,* 429 F.2d 905, 906 (10th Cir. 1970); *United States v. Kimrey,* 489 F.2d 339, 341 (8th Cir. 1974).[13]

Nor can it be persuasively argued that the refusal to find section 1352 jurisdiction over Exer-Genie's exonerated bond allows district judges unilaterally to abrogate federal jurisdiction. It must be conceded that this occurs every time a district judge decides an issue of jurisdiction incorrectly. Appellate courts exist to afford parties an opportunity to rectify these mistakes. *Stoll v. Gottlieb,* 305 U.S. 165, 171–75, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *see also Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d

---

11. This may further burden the courts with lawsuits by sureties seeking a declaratory judgment as to their liability on an exonerated bond.

12. *Natural Resources Defense Council, Inc. v. Morton,* 337 F.Supp. 167, 169 (D.D.C.1971), *motion for summary reversal denied,* 148 U.S. App.D.C. 5, 458 F.2d 827 (1972); *cf. Friends of the Earth, Inc. v. Brinegar,* 518 F.2d 322, 323 (9th Cir. 1975).

13. Neither can Buddy Systems find support in reading treatises. One treatise states only that a premature exoneration "will not immunize the principal or surety from what otherwise might be the liability against them." 11 Wright & Miller, *supra,* § 2972, at 650. The authors cite two cases for this proposition, both distinguishable from our case. One is *Atomic Oil;* the other is *Northeast Airlines, Inc. v. Nationwide Charters & Conventions, Inc., supra,* where the court reversed the exoneration on a direct appeal of the original action for injunctive relief. In neither the cases nor the context of the treatise authors' discussion was there any reference to jurisdictional problems or section 1352.

186 (1963). Whether by neglect or strategy, Buddy Systems did not avail itself of a similar opportunity. We cannot save Buddy Systems from its blunder when the end result will be to override the clearly expressed intent of Congress in its allocation of federal jurisdiction.

REVERSED AND REMANDED.