Argued September 6, decided September 26, 1911.

## MOORE v. LACHMUND.

[117 Pac. 1123.]

INJUNCTION—BONDS—JOINT OR SEVERAL OBLIGATION.

1. Where an injunction bond recited that "plaintiffs undertake and promise to pay all costs and disbursements that may be decreed to defendants, and such damages as they may sustain by reason of the injunction, if it be wrongful," the undertaking creates a liability running in favor of any one of the defendants.

INJUNCTION—LIABILITIES ON BONDS—ACTIONS—VARIANCE.

2. An injunction bond, though running to all the defendants, was an obligation to each one severally. Before the dismissal of the injunction, one defendant acquired the interest of all the rest. In an action on the bond, that defendant alleged that the obligors undertook to pay him all costs and damages, and set out the bond, and alleged that he was the real party in interest. *Held,* that there was no variance between the allegations of the complaint and the proof of the bond first mentioned, for Section 37, L. O. L., allows the real party in interest to sue alone on any undertaking.

ESTOPPEL—ESTOPPEL IN PAIS.

3. A contract for the sale of hops to be grown on certain land stated that plaintiff's wife was the owner of the land, and was signed by plaintiff, his wife, and the tenant in possession. Plaintiff acquired the land by deed from his wife, bearing date earlier than that of the contract. *Held,* that if at the time of the execution of the contract the wife had conveyed the land to plaintiff it had no bearing on the contract, as he also was a party to it; and, in an action on a bond given in a suit to enjoin plaintiff and the other parties to the contract, plaintiff was not estopped from setting up that he was the owner of the land and the real party in interest.

INJUNCTION—LIABILITIES ON BOND—TIME COVERED BY BOND.

4. A bond given for a preliminary injunction, in accordance with Section 417, L. O. L., requiring the undertaking to be that plaintiff and

surety will pay all costs and disbursements that may be decreed to defendant, and such damages, not exceeding such amount therein specified, as defendant may sustain by reason of the injunction, if it be wrongful, covers not only the damages until the injunction is made permanent, but all damages up to the time of dismissal by the Supreme Court.

APPEAL AND ERROR—ERROR FAVORABLE TO PARTY COMPLAINING—
    INSTRUCTIONS—BONDS—DAMAGES.
    5. A temporary injunction was issued on plaintiff's giving a bond, restraining defendants from selling certain hops. The injunction was made permanent, and on appeal was dismissed. Before the dismissal, the hops were sold under the injunction decree, and defendants in the injunction suit brought an action on the bond. The jury were instructed to allow them the amount of the depreciation in value of the hops between the time of the issuance of the injunction and its dismissal. Held, that the obligors in the bond were not prejudiced by the instructions, as they could not return the hops, they having been sold on execution, and if they were worth more, at the time the original suit was dismissed, than they were at the time of the sale on execution, plaintiffs in the injunction suit could claim no advantage from it, as the hops had been converted by them.

EVIDENCE—MARKET VALUE—EXECUTION SALE.
    6. Evidence of the price obtained for personal property sold under execution is competent evidence of the value of the property at the time of the sale, if the sale was not made under extraordinary circumstances.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by G. J. Moore against Louis Lachmund and Julius Pincus, partners doing business under the firm name and style of Louis Lachmund & Co. and Russell Catlin, to recover damages suffered by plaintiff by reason of the breach of an undertaking given on the issuance of a temporary injunction in the case of Lachmund and others against G. J. Moore, Rebecca A. Moore, and C. E. Nash. Plaintiffs in the latter case brought suit against defendants upon the contract, dated March 19, 1906, providing for the cultivation, harvesting, and sale, by defendants to plaintiffs, of 15,000 pounds of hops, and, on September 29, 1906, plaintiffs procured the preliminary injunction, enjoining defendants from selling the hops pending litigation. On December 21st thereafter, the circuit court rendered a final decree in the suit against defendants for the sum of $900, with interest and costs, and in the decree the injunction was made perpetual.

The undertaking for the injunction being in the following words:

"Whereas, the above-named plaintiffs commenced suit in the circuit court for Marion County, Oregon, Department No. 2, against the above-named defendants, and have applied to the circuit court for a writ of injunction to restrain the defendants from doing certain acts complained of, particularly set forth in their said complaint; and whereas, the plaintiffs are desirous that said writ of injunction should issue as prayed for. Now, therefore, we, Louis Lachmund & Company, plaintiff, as principals, and Russell Catlin, as surety, do hereby undertake and promise that the plaintiffs will pay all costs and disbursements that may be decreed to the defendants, and such damages, not exceeding the sum of $1,750, as they may sustain by reason of the injunction, if the same be wrongful or without sufficient cause. Dated this 29th day of September, 1906. [Signatures.]"

On appeal to the Supreme Court by defendants, the decree was reversed, and the injunction dissolved on March 17, 1908. Prior to the decision of the Supreme Court, namely, on January 16, 1907, the hops were sold on an execution issued upon the decree, for the sum of $1,075, of which $11 were applied upon the expenses of the sale. On May 23, 1908, after the decision of the Supreme Court, $1,064—the proceeds of the hops—were paid to G. J. Moore, who brings this action to recover upon the undertaking the damages suffered by reason of the injunction, namely, the value of the hops at the time the injunction was issued (17 cents a pound), less the amount received by him from the execution sale.

At the trial plaintiff offered in evidence a deed, dated March 17, 1906, from Rebecca A. Moore, conveying the land upon which the hops were grown to G. J. Moore, also the assignment of the lease from C. E. Nash to G. J. Moore, dated September 10, 1906, the complaint in the suit, the undertaking for the injunction, the decree, the execution issued upon the decree, and the sheriff's return

thereon. Judgment was rendered for plaintiff in the sum of $1,000. Defendants appeal. AFFIRMED.

For appellants there was a brief over the names of Messrs. *Carson & Brown,* with an oral argument by *Mr. Thomas Brown.*

For respondent there was a brief and oral arguments by *Mr. Alva O. Condit* and *Mr. George G. Bingham.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1, 2. It is first contended by defendants that there is a variance between the undertaking offered in evidence and the allegations of the complaint, to the effect that the obligors undertake to pay this plaintiff all costs, damages, etc., and that by its terms the undertaking is made payable to defendants in the suit, namely, G. J. Moore, Rebecca A. Moore, and C. E. Nash. The undertaking is set out as an exhibit and made a part of the complaint. We do not deem this a variance, in view of the fact that the undertaking creates a liability in favor of any one of the defendants in the suit. The remedy was not confined to a liability running to all the defendants jointly. Subsequent to the execution of the lease, plaintiff became the owner of the land, thus succeeding to the interests of Rebecca A. Moore, and on September 10, 1906, prior to the commencement of the suit, Nash assigned the lease to plaintiff, whereby he became the sole owner of the hops, and, by the authority of *Ruble* v. *Coyote G. & S. M. Co.,* 10 Or. 39, and Section 37, L. O. L., the real party in interest may sue alone on the undertaking. To the same effect is *Summers* v. *Farish,* 10 Cal. 347, 351, where it is held that, "though given to all the obligors by name, and using no words directly expressing a several obligation, yet necessarily creates a several liability, the design of it being to secure each and all of the obligees from damage or injury; * * (otherwise) it would operate very harshly

and, in many cases, amount to no security at all, if recoveries could only be had for joint injury." Our statute, Section 37, L. O. L., has done away with the necessity of following the old form of action, which requires the action to be in the name of the obligees in the undertaking even though they be naked trustees. See, to the same effect, *Browner* v. *Davis,* 15 Cal. 9; *Fowler* v. *Frisbie,* 37 Cal. 34; *Wason* v. *Frank,* 7 Colo. App. 541 (44 Pac. 378). Therefore, where the undertaking was set out *haec verba* by exhibit in the complaint, it was not fatal to the pleading to allege that the obligors undertook to pay plaintiff his costs and damages, as the complaint alleged that he is the real party in interest.

3. (2) It is contended by defendants that, by the contract for the sale of the hops, plaintiff solemnly states that Rebecca A. Moore was the owner of the land upon which the hops were to be grown. It appears that two days before the date of the contract the deed had been executed by Rebecca A. Moore, conveying the land to G. J. Moore. Whether it had been delivered or not on March 19, 1906, the date of the contract, is not shown. It was not recorded until June 2, 1909, but we deem it immaterial which of them owned the land. Rebecca A. Moore, G. J. Moore, and C. E. Nash were all required to sign the contract, and were bound by it to the extent that their interest in the hops, at least, and the lease, under which Nash was raising the hops, was made by Rebecca A. Moore, and if, at the time of the execution of the contract, she had conveyed the land to G. J. Moore, it has no bearing upon the contract, as he is also a party to it; and at the time of the issuance of the injunction he was the owner of the land and the hops, and was the real party in interest, and is not estopped from so alleging and proving. Defendants also urge, that, by plaintiff's answer in the equity suit, he disclaims any interest in the hops, and that he should now be estopped from contradicting

that fact. As we understand the answer, the allegations therein, as to the ownership of the hops, relate to the condition at the time the contract was signed, when Nash was the owner of the hops, and not at the time the answer was filed, and therefore was not a disclaimer of the ownership of the hops at that time. On the contrary, by the deed of the land to him, and by the assignment of the lease to him, he became the only party in interest to the hops at the time the injunction was issued, and is not estopped to so allege.

4. (3) Defendants contend that the amount of plaintiff's recovery should be the amount of the depreciation in the value of the hops between September 29, 1906, when the injunction was issued, and December 21, 1906, when the injunction was made permanent; and that the court erred in instructing the jury that, "you are entitled to consider depreciation of the value of hops, not only after the decision in the circuit court, but until it was finally decided in the Supreme Court, and the mandate entered in the circuit court." Defendants' contention would seem to be supported to some extent by *Weber* v. *Wilcox*, 45 Cal. 301; *Lambert* v. *Haskell*, 80 Cal. 611 (22 Pac. 327) ; and *Houghton* v. *Meyer*, 208 U. S. 149 (28 Sup. Ct. 234: 52 L. Ed. 432), which is the case of *Cortelyou* v. *Houghton*, 27 App. D. C. 188, removed to the Supreme Court by writ of error. The condition of the undertaking in the California case (*Weber* v. *Wilcox*) is that the makers were to pay "such damages * * as such parties may sustain by reason of said injunction, if the said court finally decide that the said plaintiffs were not entitled thereto." Thus the liability is made to depend upon the ruling of the district courts, and this is according to the requirements of the statute. In the case of *Houghton* v. *Meyer*, the United States court distinguishes between an interlocutory injunction and a temporary restraining order, under Section 718 U. S. Rev. St. (U. S.

Comp. St. 1901, p. 580), providing for a restraining order, until the hearing of the motion for an interlocutory injunction. In that case it is held that the injunction was given to secure the defendants against the loss because of a temporary restraint, but the court say:

"As we have seen, an interlocutory injunction is usually granted until the coming in of the answer. or until the final hearing of the cause, and stands as a binding restraint until rescinded by the further action of the court." See, also, High, Injunction, § 3.

In *Dodge* v. *Cohen*, 14 App. D. C. 582, it is held, that the injunction remained in force after the final hearing in the circuit court, and that, as long as it remained in operation, the undertaking remained in force as a means of indemnity. Some of the text-books seem to have followed the California decision, but fail to note the language of the undertaking, limiting the liability to the time of the final order of the district court. However, in a very recent case (*Columbia Amusement Company* v. *Pine Beach Inv. Corp.*, 109 Va. 325 (63 S. E. 1002), the question here involved was directly before the court, in which the counsel for plaintiff in error made the same contentions as are made by the defendants here. The court say:

"This seems to be a very narrow interpretation of the injunction bond. By its terms the obligors therein became responsible to pay all such costs as may be awarded against the said plaintiff, and all such damages as shall be incurred in case the said injunction be dissolved. It specifically embraces all costs and all damages. The circuit court had required, as a condition to granting the relief which the Columbia Amusement Company prayed for, that it should execute a bond; upon the faith of that bond the injunction was granted, and by the decree of the circuit court the injunction so granted was perpetuated and remained in force until dissolved by the decree of this court. Whatever costs and damages were incurred and suffered from the time the injunction was granted until its dissolution seem to be plainly within the terms of the injunction bond, and any other interpretation or con-

struction would fall short of securing to a party who had been hindered and restrained by injunction at the suit of his adversary compensation adequate to the injury suffered.  We are of the opinion that this assignment of error cannot be maintained."

That case is reported in 16 Am. & Eng Ann. Cas. 1120, 1122, in which the note only cites the California cases and *Houghton* v. *Meyer,* 208 U. S. 149 (28 Sup. Ct. 234: 52 L. Ed. 432), as holding to the contrary, and *Officer* v. *Morrison,* 54 Or. 459 (102 Pac. 792), as supporting the main case.  In the latter case the only controversy was as to the recovery of all the costs in the case; but it was held that, by the terms of the statute, the undertaking created a liability for costs incurred after the temporary injunction was made perpetual by the circuit court, namely, the undertaking must be "to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction, if the same be wrongful or without sufficient cause."  Section 417, L. O. L.  The present case is a good illustration of the fact that the damage resulting from the injunction is not alone that suffered prior to the final decree of the circuit court, but it is continuing.  At the time the writ was issued, the hops were worth 17 cents per pound.  Hops are a commodity the price of which is liable to sudden fluctuations, and there was in this case a great depreciation in price immediately after September 29, 1906.  By the temporary injunction, this plaintiff was held until his hands were tied by the permanent injunction.  He was prevented from selling at the top price, which he says he would have done, or afterward until the injunction was made permanent.  The price may have continued to decline after the final decree in the circuit court, and the whole loss was suffered because of the temporary injunction, but for which the permanent

injunction would have been prevented or rendered harmless. It was not error to authorize the jury to find for plaintiff for the whole loss.

5. (4) It was also assigned as error that the court authorized the jury to consider and allow plaintiff the amount of the depreciation in value of the hops between the time the injunction was issued and the time the suit was finally dismissed, as there was no evidence showing the value of the hops on the date the suit was dismissed (March 19, 1908) ; the instruction not being restricted to the issues made in the pleading. The hops were sold on the 16th of January, 1907, and plaintiff alleges that he received $1,064 on May 23, 1908, from the sale of the hops, and asks judgment for the difference between their value on the 29th of September, 1906, and the amount he so received. Defendants are not prejudiced by .this instruction. They could not return the hops to plaintiff on March 17, 1908, or at any time after January 16, 1907. Therefore, if the hops were worth more on March 17, 1908, than on January 16, 1907, defendants can claim no advantage of it, as the hops had been converted by them. If the value of the hops was less on March 17, 1908, than on January 16, 1907, plaintiff was not entitled to prove that fact, because he had already received the price bid at the sheriff's sale, representing a greater value. In fact, the proceeds of the sale ($1,064) were the value of the hops at the time the suit was dismissed, as the hops had been disposed of, and the money took their place at that time. If there was any error in the instruction complained of, it was in defendants' favor, and harmless.

6. (5) Error is also assigned in the admission of evidence of the sheriff's return upon the execution, which showed the price obtained for the hops, and intended as evidence of their value at that time. Although the courts are not uniform in their holding upon this question, we think the weight of authority is in favor of the admission

in evidence of the price obtained at an execution sale of personal property, as constituting some evidence of the value of the property at the time of the sale, if it is not made to appear that the sale was made in an unusual way or under extraordinary circumstances. This is the holding in New York. *Montignani* v. *Crandall Co.*, 34 App. Div. 228 (54 N. Y. Supp. 517) ; 13 Ency. of Evidence 541; 2 Sedg., Damages (8 ed.) § 495; 3 Sedg., Damages, § 1298; *McCown* v. *Kitchen* (Tex. Civ. App., not officially reported), 52 S. W. 801; *Hildreth* v. *Fitts,* 53 Vt. 684. Therefore it was not error to admit in evidence the sheriff's return on the execution.

The judgment is affirmed.          AFFIRMED.