Argued and submitted June 10, 1999, reversed and remanded in part; otherwise affirmed October 4, 2000

HAYES OYSTER CO.,
an Oregon corporation,
*Appellant,*

*v.*

Frank D. DULCICH,
an individual;
Dulcich, Inc.,
an Oregon corporation;
Pacific Seafood Co., Inc.,
an Oregon corporation;
and Pacific Oyster Co.,
an Oregon corporation,
*Respondents.*

(952016; CA A95904)

12 P3d 507

Philip L. Nelson, Judge pro tempore.

Richard S. Pope argued the cause for appellant. With him on the briefs was Newcomb, Sabin, Schwartz & Landsverk.

William H. Walters argued the cause for respondents. With him on the briefs were John F. Neupert and Miller, Nash, Wiener, Hager & Carlsen.

Before Edmonds, Presiding Judge, and Kistler and Brewer, Judges.

KISTLER, J.

## KISTLER, J.

The jury awarded plaintiff Hayes Oyster Co. $45,400 in compensatory damages because defendants, Frank Dulcich, Pacific Sea Food, Inc., and Pacific Oyster, Inc.,[1] had converted Hayes' oyster shell pile. The jury did not award Hayes punitive damages. On appeal, Hayes raises 24 assignments of error. Its assignments focus on the proper measure of damages for conversion, evidence on punitive damages, instructions concerning the Port of Garibaldi, and two summary judgment rulings. We affirm the judgment in part, reverse it in part, and remand.

Beginning in 1947, Hayes Oyster Co. leased land from the Port of Garibaldi on which Hayes' oyster cannery was located. Oyster shell is a by-product of oyster canning, and, for years, the Port had given Hayes permission to store its oyster shell on public land next to the cannery. The old shell is used to seed new oysters.[2] Over the years, the shell pile next to Hayes' oyster cannery grew. At trial, Hayes' expert testified that by 1991 the shell pile had grown to almost 310,000 cubic feet, or 329,627 bags of oyster shell, although the parties disagree about how much of the shell Hayes had placed there.

By the 1990s, Sam Hayes, the head of the business, had grown old, and Hayes' business was languishing. While Hayes' business was in decline, Dulcich's business was on the rise. As part of his business expansion, Frank Dulcich wanted to enter the Tillamook Bay oyster business. He tried to buy Hayes' assets, but he and Sam Hayes could not agree on a price. At some point, Dulcich learned that Hayes was not making timely payments on 300 acres of oyster lands that Hayes had bought from Bob Olson.[3] In 1991, Dulcich had his attorneys draw up a new agreement between Sam Hayes and

---

[1] Except where the identity of a particular defendant is significant, we refer to defendants collectively either by that term or as Dulcich.

[2] Oyster seed will attach to the old shell and grow. In Tillamook Bay, oysters will not seed naturally; the old shell must be seeded elsewhere.

[3] In addition to those 300 acres, Hayes also had an oyster claim on approximately 1,600 acres of oyster lands in Tillamook Bay.

Bob Olson. The new agreement reduced Hayes' monthly payments but made it easier to foreclose if Hayes defaulted. Hayes signed the new agreement, and Olson assigned the agreement to Dulcich. When Hayes failed to make a payment, Dulcich declared a default and foreclosed. Dulcich and Hayes settled the foreclosure action and entered into a release.

In June 1991, the Port of Garibaldi notified Hayes that it was terminating the lease for Hayes' oyster cannery because Hayes had failed to pay real property taxes. Hayes paid those taxes, and in August 1991 the Port and Hayes entered into a new lease. That lease does not include a promise that the Port would dredge a channel to provide access to Hayes' cannery and shell pile. Before the new lease was signed, the Port Commissioners stated in the minutes of one of their meetings that they believed that it would be impossible to provide water access to Hayes' cannery.

In November 1991, the Port manager wrote Hayes and asked that two sheds and other equipment be removed from the Port's land. That letter did not specifically mention the shell pile. Other letters followed. In August 1992, Hayes protested when Dulcich began to take oyster shell from the pile. Dulcich did not respond directly, but, in September 1992, the Port sent a letter to Sam Hayes, telling him that the Port considered the buildings and property that had not been removed from the Port's land to be "abandoned property" that was "now [the] property of the Port of Garibaldi, the land owner." That letter specifically identified oyster shell as part of the property that had been abandoned. Soon afterwards, the Port gave Dulcich permission to remove the oyster shell. In June 1993, the Port terminated its latest lease with Hayes because Hayes had failed to maintain the cannery building and to provide insurance coverage.

In 1995, Hayes filed this action against defendants alleging conversion, tortious interference with contract, tortious interference with economic relations, a claim for declaratory judgment, and ejectment. Defendants moved for summary judgment on all of Hayes' claims. The trial court granted defendants' summary judgment motion on all Hayes' claims except for its conversion claim. After the trial court's

ruling on summary judgment, Hayes amended its complaint to allege lost profits as part of the damages on its conversion claim.

Before trial, defendants filed a motion *in limine* to exclude evidence that defendants sold seeded oyster shell to overseas buyers for approximately $30 per bag. Although the trial court granted that motion, one of Hayes' witnesses offered evidence at trial, without objection, that seeded shell sells for between $16 and $20 per bag and that it costs about $4 per bag to seed the shell. Hayes' witness also testified that Hayes had planned to sell some seeded shell to raise capital for its oyster business. He did not say, however, how much seeded shell Hayes intended to sell. The witness concluded that Hayes suffered lost profits of $2.7 million as a result of the loss of its unseeded shell.

At the conclusion of Hayes' case, defendants moved for a directed verdict on Hayes' lost profits claim. Defendants argued that Hayes had not offered any evidence of how much seeded shell it planned to sell. The trial court granted defendants' motion and instructed the jury that Hayes' lost profits claim had been withdrawn.[4] The jury returned a verdict in Hayes' favor finding that each of the three defendants, Frank Dulcich, Pacific Oyster, and Pacific Sea Food, had converted Hayes' oyster shell and that the converted shell was worth $45,400. The jury also found that each defendant had taken Hayes' shell "with [the] belief that it had permission to do so" or that each defendant "otherwise was entitled to take the shell." The jury did not award Hayes any punitive damages.

■ Before discussing Hayes' assignments of error, we address two preliminary matters. First, in their brief, defendants renew their argument that most of Hayes' assignments of error should be dismissed because Hayes accepted the benefits of the judgment. Before defendants filed their brief, we denied their motion to dismiss on that ground, as well as their motion to reconsider our ruling. Although we did not give defendants leave to renew their motion in their brief, defendants have done so.

---

[4] Hayes has not assigned error to the trial court's ruling on its lost profits claim.

Defendants' renewed motion is inconsistent with ORAP 7.15(3). That rule provides that "[i]f any motion other than a challenge to the court's jurisdiction is denied before submission of the case, the motion may not be resubmitted without leave of the court in the order on the motion." The plain language of the rule precludes defendants from renewing their motion unless it is either jurisdictional or we gave them leave to resubmit it. *See State ex rel SOSCF v. Williams*, 168 Or App 538, 541 n 3, 7 P3d 655 (2000); *State ex rel Juv. Dept. v. Black*, 101 Or App 626, 628 n 1, 792 P2d 1225 (1990).[5] Because neither exception applies here, defendants' first argument is not properly before us.

■ Defendants advance a second argument. They argue that we should not consider Hayes' assignments of error because Hayes has not set out the pertinent portions of the record as part of its assignments of error. *See* ORAP 5.45(4) (explaining what should be included as part of an assignment of error). In its reply brief, Hayes notes that its opening brief referred to the court's rulings in its statement of facts. In its view, that is enough. Alternatively, Hayes has set out the pertinent portions of the record in an appendix to its reply brief. Had Hayes not included the pertinent portions of the record in the appendix, we might be inclined to grant defendants' motion. The requirement that an appellant set out the pertinent portions of the record in its opening brief is not a meaningless formality. Rather, the information the rules require enables the court and the opposing party to identify the specific ruling the appellant assigns as error, determine whether an objection was properly preserved, and understand the basis for the trial court's ruling.[6] In this case, the

_____

[5] In *Black*, we determined before oral argument that the order the appellant challenged was appealable. 101 Or App at 628 n 1. We later reconsidered the issue. We explained in our decision: "Because the issue is one of jurisdiction, [our earlier] determination is not controlling, and we may reconsider it. *See* ORAP 7.15(3)." *Id*. *Williams* is to the same effect. *See* 168 Or App at 541 n 3. Although both *Black* and *Williams* addressed jurisdictional motions, both decisions imply that, if the determination were not jurisdictional, ORAP 7.15(3) would preclude a party from resubmitting the motion without leave of the court.

[6] Hayes, for example, assigns error to multiple evidentiary rulings that the trial court made but does not set out the specific evidence it offered, defendants' objections, or the trial court's rulings. The question, however, whether the trial court erred often turns on the information that Hayes omits. Although Hayes' brief summarizes what, in its view, the evidence would have proved, a party's

pertinent portions of the record that Hayes included in its reply permit us to make those determinations. We accordingly turn to the merits of Hayes' various assignments of error.

Hayes' first three assignments of error center on the proper measure of damages for conversion. Hayes' third assignment of error is directed at the trial court's ruling granting defendants' pretrial motion *in limine*. Defendants had moved to exclude evidence that they had sold seeded oyster shells to an overseas buyer for approximately $30 per bag. Defendants argued that the price for seeded shells was not admissible to prove the market value of unseeded shells unless there was no market for unseeded shells. Hayes' response before the trial court was two-pronged. Hayes recognized that before *Barber v. Motor Investment Co.*, 136 Or 361, 367, 298 P 216 (1931), the court had required proof that there was no market for the converted property before evidence of alternative measures of value could be introduced. Hayes, however, argued that *Barber* overruled that precondition to admitting alternative measures of value and that, after *Barber*, the "pertinent inquiry is [simply] whether [the] damages awarded affords just compensation to the owner wrongfully deprived of his property." In Hayes' view, any evidence is now admissible if it is relevant to determining "just compensation" for the loss of its unseeded shell.[7] Alternatively, Hayes argued that there was "no established market" for unseeded shell, apparently in case the legal standard that defendants advanced was correct.

---

retrospective view of its own evidence is no substitute for a contemporaneous offer of proof, the precise objection, and a verbatim recitation of the trial court's ruling.

[7] Hayes relied on two additional cases below to support its argument. First, it argued that *Genova v. Johnson*, 213 Or 47, 53, 321 P 1050 (1958), establishes that the measure of damages should be a flexible one that does not require proof that there is no market for unseeded shell before introducing alternative ways to value the unseeded shell. Second, Hayes relied on *Holliday v. Dunn & Baker, Inc.*, 125 Or 144, 265 P 1096 (1928), for the proposition that "the true measure of damages for conversion of raw materials is the value of the raw materials after they have been readied for use, less the cost of readying them for use." In response to the trial court's questions, however, Hayes explained that its reading of *Holliday* was based on the premise that *Barber* had dispensed with the requirement that no market exist for the converted goods before alternative measures of value could be introduced.

■ Before turning to Hayes' arguments, we note an issue that runs through Hayes' arguments but which it never clearly identifies. There is a suggestion in Hayes' argument, both below and on appeal, that it should be able to introduce evidence of the price the overseas buyers paid for seeded shell to establish its lost profits. *See Preble et al. v. Hanna,* 117 Or 307, 317, 244 P 75 (1926) (allowing lost profits in a conversion case). There is a difference, however, between introducing the price paid for seeded shells to establish the profit that Hayes would have made if defendants had not taken its unseeded shells and introducing the same evidence to establish the value of the unseeded shells themselves. Even if Hayes should have been able to introduce the price paid for seeded shells to establish its lost profits, any error was harmless. As explained above, the trial court granted defendants' directed verdict motion on Hayes' lost profits claim because it had not introduced any evidence to show how much seeded shell it intended to sell. Because Hayes has not assigned error to that ruling, *see* n 4 above, the only question properly before us is whether the price the overseas buyers paid for seeded shell should have been admitted to prove the value of the unseeded shell that defendants took.[8] We turn to that issue.

■ The Oregon Supreme Court "has [long] held that the measure of damages for the conversion of personal property is the reasonable market value of the goods converted at the time and place of conversion[.]" *Hall v. Work,* 223 Or 347, 357, 354 P2d 837 (1960); *see also Lanz v. Douglas Tool & Engineering, Inc.,* 138 Or App 89, 92, 907 P2d 1128 (1995); *Restatement (Second) of Torts* § 927 (1979). In this case, the "goods converted at the time and place of conversion" was unseeded shell. Under the general rule, Hayes is entitled to the market value of unseeded shell, not the market value of seeded shell. *See Hall,* 223 Or at 357. The trial court correctly

---

[8] On appeal, Hayes also argues that, even if the price paid by the overseas buyer is not otherwise admissible, the court should have admitted it during trial to explain prior statements made by Jesse Hayes regarding the shell's value. Hayes does not, however, include the ruling excluding that evidence in its appendix to its reply brief as one of the rulings to which it is assigning error, and we decline to consider its argument. ORAP 5.45; *McCathern v. Toyota Motor Corp.,* 160 Or App 201, 233, 985 P2d 804, *rev allowed* 329 Or 553 (1999).

recognized that, under the general rule, the market value of seeded shell was not relevant.

Hayes, however, argues on appeal, as it did below, that under the Supreme Court's decisions in *Barber* and *Genova v. Johnson*, 213 Or 47, 321 P 1050 (1958), evidence that bears on "just compensation" should be admitted without regard to whether there is (or is not) a market for unseeded shell. Hayes correctly notes that the Supreme Court observed in *Barber*:

> "Ordinarily the market value of the property meets the requirement of just compensation. When, however, this general rule runs counter to the cardinal rule of just compensation, it is not to be followed. In the case of household goods and furniture owned and kept for personal use, their market value is not * * * considered fair and just compensation, but the owner is entitled to recover the actual value of the property to him, excluding * * * any fanciful or sentimental value * * *."

136 Or at 366. *Genova* contains language to the same effect. *See* 213 Or at 53. Apparently, in Hayes' view, those cases permit the jury to consider evidence of value (other than the market value of the goods converted at the time and place of conversion) whenever the jury determines, for whatever reason, that "market value would not be just compensation." *Genova*, 213 Or at 53.

■ The difficulty with Hayes' argument is that the court subsequently limited the reasoning in *Barber* and *Genova* to personal effects, such as household furniture. *Hall*, 223 Or at 361-62. The court explained in *Hall*:

> "The italicized portion of the first statement quoted from the *Barber* case [which we have quoted above] seems to have been the foundation for the following statement in the *Genova* case:
>
> > " '* * * But while market value is ordinarily the measure of damages in conversion, that is because market value is ordinarily just compensation. It is not the exclusive measure, and where market value would not be just compensation, other means may be used to show actual value.'

"The statement as applied to the facts in the *Barber* case was not improper. But when taken out of context and applied to property with a market value, it leads to an erroneous result. The ubiquitous used car lot is ample proof that automobiles [the goods converted in *Hall*] have a well-established market value. Insofar as the *Genova* case is inconsistent with what is said here, it is overruled."

*Id.* (ellipses in original); *see also Mattechek v. Pugh*, 153 Or 1, 55 P2d 730 (1936).[9] Of course, a party may always prove that there is no market for property other than personal household goods as a precondition to offering alternative methods of valuation. But the flexible approach that Hayes finds in *Barber* and *Genova* does not extend to all converted property, as Hayes' argument assumes. Rather, it is limited to situations where fair market value is not equivalent to just compensation for the loss incurred. *See Hall*, 223 Or at 362.[10] The trial court applied the correct legal test in resolving defendants' motion *in limine*.

■ The remaining question is whether the evidence supports the court's pretrial ruling that there was a market for unseeded shell. *State v. Carlson*, 311 Or 201, 214, 808 P2d

---

[9] *Mattechek* addressed the proper measure of damages in an action for conversion of household furnishings from an apartment house. The court held that because the furnishings were part of a business venture, not household goods kept for personal use, the trial court should not have given the jury an instruction based on *Barber*. 153 Or at 9-10. Rather, the plaintiff had to prove that there was no market for the property before the jury could consider a measure of damages other than the household goods' market value. *Id.*

[10] Hayes argues on appeal, as it did below, that *Holliday* establishes that "the measure of damages for conversion of a raw material is the value of the material after it has been readied for commercial sale, less the cost of readying it for sale." Hayes' reliance on *Holliday* is misplaced for two reasons. First, it assumes that *Barber* obviates the need to prove first that there is no market for the raw material. As explained above, *Barber* is more limited than Hayes perceives, and *Holliday* itself expressly provides that "[b]efore [the] plaintiff could be permitted to show the value of the rock other than the market value thereof, it would have been necessary for him to have shown that there was no market value." 125 Or at 148. Second, the rule announced in *Holliday* arose out of a situation in which minerals were mistakenly extracted from someone else's land. *See* 125 Or at 147. Because the act of extracting, and thereby converting, the minerals necessarily increased their value, the *Holliday* court, in *dictum*, referred to that fact. Even if *Holliday* did not require proof that there was no market value for the rock in the ground before resorting to its value out of the ground, it still does not purport to state a rule for all raw materials, such as oyster shell, that can be converted without adding anything to their value.

1002 (1991).[11] In support of their motion, defendants relied on: (1) a letter written by Sam Hayes in which he stated that the "undisputed fair market value price for oyster shells, per bag, is one dollar ($1.00)[;]" (2) Jesse Hayes' affidavit stating that unseeded shell is worth $1 on the ground and $8 when it is bagged; (3) the fact that Hayes had purchased some unseeded shell for $3 per bag and had an opportunity to buy additional unseeded shell for $8 per bag; and (4) the fact that the Port sold 22 truckloads of unseeded shell for $20 per truckload. Based on that evidence, which was undisputed, the trial court found that there was a market for unseeded shell. Because there was evidence to support its finding, we will not disturb it on appeal. *See Carlson*, 311 Or at 214. The trial court did not err in granting defendants' motion *in limine*.

Hayes also assigns error to the trial court's refusal to give the following requested jury instruction:

> "If you find liability for conversion, you must then determine the amount of money that would fairly and justly compensate Hayes Oyster Co. for its loss of shell. You are to look to evidence of value that has been submitted to you in deciding this question. *This includes the value of seeded oyster shell at the time and place of conversion, less the costs of seeding and selling the shell.*"

(Emphasis added.) Hayes' requested instruction would have directed the jury to consider the value of seeded shell in determining the value of unseeded shell even though there was ample evidence before the jury from which it could find that there was a market value for unseeded shell.[12] The instruction was not a correct statement of law. *See Hall*, 223 Or at 361-62. Hayes' proposed instruction appears to be

---

[11] Below, Hayes treated defendants' motion *in limine* as if the determination whether there was a market for unseeded shell was a preliminary question of fact for the trial court under OEC 104(1).

[12] The evidence introduced at trial showed that Hayes had purchased some unseeded shell for $3 per bag and declined to purchase unseeded shell at $8 per bag. There was also evidence that another oyster grower had purchased some unseeded shell at $5 per bag. Sam Hayes' letter stating that the "undisputed fair market value price for oyster shells, per bag, is one dollar ($1.00)" was also before the jury, as was the fact that the Port had sold 22 truckloads of unseeded shell for $20 per truckload.

based on its understanding of *Barber* and *Genova* that any evidence of value may be considered in "determin[ing] the amount of money that would fairly and justly compensate Hayes Oyster Co. of its loss of shell." As explained above, however, the court rejected that expansive view of *Barber* and *Genova* in *Hall*. The trial court did not err in refusing to give Hayes' requested instruction. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998) (trial court does not err in rejecting proposed jury instruction that misstates the law); *State v. Ready*, 148 Or App 149, 158, 939 P2d 117, *rev den* 326 Or 68 (1997).

■ Hayes' second assignment of error is directed at the trial court's ruling admitting evidence of the price the Port of Garibaldi received for unseeded shell. At trial, Hayes offered a document showing that the Port had sold 22 truckloads of unseeded shell from the shell pile. Hayes, however, had redacted the document to omit the price that the Port had received for the shell. When defendants argued that the entire document should be admitted under OEC 106, Hayes responded that the price the Port received was not "otherwise admissible" and thus could not come in under that rule.[13] *See State v. Charboneau*, 323 Or 38, 49, 913 P2d 308 (1996). Relying on *Fredenburg v. Horn et al*, 108 Or 672, 218 P 939 (1923), Hayes claimed that the price was not admissible because a person who converts property cannot introduce evidence of the price for which it sold the converted property. Although Hayes had not alleged that the Port had converted its property, it had filed a companion case in which it alleged that the Port had taken the property under a condemnation theory. Hayes acknowledged that condemnation "does involve different princip[les] on taking, * * * but the common analysis is that there has to be a substantial interference with the ownership rights of the plaintiff."

After considering the parties' representations and arguments, the court ruled that the evidence of the sales price was admissible under OEC 106. The court did not err.

_____

[13] OEC 106 provides:

"When part of [a] * * * writing is given in evidence by one party, the whole on the same subject, where otherwise admissible, may at that time be inquired into by the other[.]"

In *Moore v. Lachmund*, 59 Or 565, 117 P 1123 (1911), the Supreme Court held that evidence of the price received for converted property at a sheriff's sale was admissible to prove its market value. The court explained that "the weight of authority is in favor of the admission in evidence of the price obtained at an execution sale of personal property, as constituting some evidence of the value of the property at the time of the sale, if it is not made to appear that the sale was made in an unusual way or under extraordinary circumstances." *Id.* at 573-74. Twelve years later, the court declined to extend *Moore* to the sale of livestock by the two persons who had converted it. *Fredenburg*, 108 Or at 685. The court held that the evidence was not material, reasoning:

> "The plaintiff's loss would be neither greater nor less by reason of the price which [the] defendants received. The rule in cases of this character is that the wrongdoer must pay the reasonable market value of the property converted, and that is not to be estimated by the price for which it was sold. If such were the case it would encourage trespass upon personal property and sales at small value, which is against the policy of the law."

*Id.* The court observed that when converted property is sold at an official sale at public auction, there is a presumption of fairness "which neither in law nor logic attaches to a private sale made by a wrongdoer." *Id.*

Read together, *Moore* and *Fredenburg* establish that the circumstances of a sale of converted property will bear on whether it is admissible to establish the property's value. Where, as *Fredenburg* explained, a "wrongdoer" converts property, the price received at a subsequent sale may not be an accurate reflection of the property's true value. Stolen property, for example, may be sold for a fraction of its value. In this case, Hayes sought to exclude evidence of the Port's sale of oyster shell. There was no claim, however, that the Port had converted the shell. The fact that the Port may have, as Hayes apparently alleged in a companion case, taken the property without just compensation does not establish the sort of "wrongdoing" that would render evidence of the Port's subsequent sale so unreliable as to be inadmissible as a matter of law. Hayes offered no evidence, for example,

that the sales were surreptitious or conducted under suspicious circumstances. In short, there was evidence from which the trial court could find under OEC 104(1) that the circumstances of the Port's sale did not make the price it received so unreliable as to be inadmissible. *See Carlson*, 311 Or at 214.

■ Hayes' next 13 assignments of error are directed at four rulings the trial court made. According to Hayes, those four rulings resulted in the exclusion of two categories of evidence: (1) evidence that Dulcich allegedly employed "underhanded methods" in obtaining, through foreclosure, the 300 acres of Tillamook Bay oyster lands that Hayes was buying from Olson Oyster, and (2) evidence of Dulcich's "complicity" with the Port "in terminating Hayes Oyster Co.'s cannery lease, installing Dulcich as the new tenant, and then building Dulcich a new cannery * * *." On appeal, Hayes argues that the evidence of Dulcich's "underhanded methods" in obtaining its oyster lands and the evidence of Dulcich's complicity with the Port should be admissible to prove its claim for punitive damages and to prove that it was Dulcich that converted the shell.

Almost all of Hayes' multiple assignments of error are directed at two pretrial rulings. In the first ruling, the trial court stated:

> "My view on prior acts or prior bad acts, whatever you want to call them, 99 percent of the time if I see them come up in a criminal case is that it is real tough to try and make a call up front until you get a flavor for what's coming in, although in this case we have massive amounts of documentation and deposition testimony that has been involved in various depositions and other proceedings to kind of give a flavor for what's there.

> "I still think that if you have got a release and you've made claims and you've got lawsuits pending and then you release everybody and settle the case, I think that to come back and try and get into those issues, I think first of all it is going to be, in effect, trying a lawsuit—another lawsuit in a lawsuit. I think it's going to be very confusing to jurors trying to sort out what happened.

> "But I think once you sign a release and let a claim go, if you think you have got one, or release actions up and to that point that were associated with that, if you now are allowed

to come back in and argue over what that release meant or it didn't mean to not have that evidence, to me, that's— defeats the whole purposes of why people settle cases and why releases are signed.

"So I don't think, *at least at this point in the proceedings, and it's subject to further, I suppose, motions to look at that down the road*, that the litigation over the three hundred acres of oyster land that apparently there was a note that was foreclosed on, the removal of the shell before the settlement, statements about, 'I will get your assets one way or the other if you aren't going to sell. I'm going to get it anyway,' that sounds like it led to the oyster land or the three hundred acres of oyster land litigation, to me, that's something that just doesn't come in."

(Emphasis added.) The second pretrial ruling Hayes assigns as error followed almost immediately on the first and is similarly tentative. The trial court stated:

"And as far as—and it's the same thing, and we have touched on it before or have made rulings as far as what I think the evidence is as far as interfering with contracts or leases between the Port and Hayes Oyster, and again, I don't see where that comes in.

"So I think you've got a few things that come in to go to your punitive damage claim, [plaintiff's attorney], but not the things that you think you should get.

"And so I'm going to limit it, *at least at this point*, limit you to just those two areas that have taken—mainly have taken place since the release agreement was signed."

(Emphasis added.)

The two pretrial rulings that give rise to most of Hayes' assignments of error are not final. They are "the trial court's subjective statement[s] of its anticipated ruling[s]," which the trial court expressly made subject to further consideration at trial. *See State v. Adams*, 296 Or 185, 189, 674 P2d 593 (1983); *State v. Jackson*, 68 Or App 506, 513, 683 P2d 120, *rev den* 297 Or 546, *cert den* 469 US 983 (1984). In *Adams*, the court declined to reach the merits of the trial court's ruling on the defendant's motion *in limine* because the ruling was not final.[14] The court's rulings here are more open

---

[11] The trial court in *Adams* ruled:

ended than the ruling in *Adams*. The trial court prefaced its
first ruling by explaining that ordinarily it did not make a
final ruling on this sort of evidence before trial. It subse-
quently qualified that ruling by saying "at least at this point
in the proceedings, and it's subject to further, I suppose,
motions to look at down the road." It qualified its second rul-
ing, which followed almost immediately on the first, by the
phrase "at least at this point." If the rulings in *Adams* and
*Jackson* were not final, neither are these two rulings. The
court's nonfinal, pretrial rulings were not error. *See Jackson*,
68 Or App at 513.

■ Even though the trial court's rulings left Hayes free
to offer this evidence at trial, Hayes attempted to do so only
twice.[15] At trial, the following exchange occurred:

"Q [by Hayes' attorney]: All right. Did Mr. Dulcich in
1990 make an offer to sell—or, excuse me, an offer to buy
Hayes Oyster?

"[DULCICH'S ATTORNEY]: Your Honor, I have an
objection. I think you ruled on this matter.

"[HAYES' ATTORNEY]: Your Honor, all I want to
establish is the offer and the rejection.

"THE COURT: Well, the objection is sustained."

Even if the trial court erred in sustaining the objection,
Hayes never explains why the anticipated answer—that
Dulcich offered to buy Hayes Oyster and that Sam Hayes
rejected the offer—would have had any material effect on its

---

"The Court has listened to argument from counsel and has reviewed the
commentary to the Oregon Rules of Evidence under Rule 503, subsection 4
* * *. And based on that authority, and assuming that these witnesses are
going to in fact testify to what [the prosecutor] has represented to the Court,
that the Defendant was intending to present at trial a fabricated defense which
would amount to a wrongdoing, in this case potentially the crime of perjury,
the court based on that representation would overrule the objection to have
these witnesses not testify on the basis of the attorney-client privilege, and
would order the witnesses to testify to those communications. * * *"
296 Or at 188 (ellipses and alteration in original).

[15] We are not aware of any attempt to offer the evidence other than the two
instances discussed below. In any event, Hayes has included only the two trial rul-
ings that we discuss below in its appendix to its reply brief as the rulings to which
it assigns error.

case. Indeed, in the next two questions, Hayes was able to elicit essentially the same information.[16] No prejudice resulted from the trial court's ruling, even if it were error. *See York v. Bailey*, 159 Or App 341, 347, 976 P2d 1181, *rev den* 329 Or 287 (1999).

 Hayes also assigns error to the trial court's ruling refusing to admit a document into evidence. A witness, however, testified as to the contents of the document without objection before the trial court sustained Dulcich's objection to the admission of the document. For all that appears from the record, the witness's testimony was sufficient to put the salient portions of the document before the jury. Moreover, because the document that Hayes offered has not been made part of the record on appeal, Hayes has provided no basis for saying that it was prejudiced by the trial court's ruling. *See York*, 159 Or App at 348. Even if the court's ruling were erroneous, Hayes has failed to establish any prejudice as a result.

 In its next group of assignments of error, Hayes complains about the trial court's failure to give six jury instructions that it requested and about one sentence contained in an instruction that the trial court did give. The requested instructions generally dealt with Hayes' claim that, in order for the Port to own the oyster shell, the Port was obligated to give Hayes due process, including notice and an opportunity to be heard, and its related claim that the Port had not complied with the Uniform Distribution of Unclaimed Property Act, ORS 98.302 to ORS 98.436. The trial court did not err in refusing to give those instructions. This is not a due process case, and the Port was not a party. Furthermore, defendants' claim that Hayes did not own any of the oyster shell was based on a theory of abandonment. The provisions of ORS chapter 98 do not preclude defendants' reliance on the defense of abandonment. *See Rich v. Runyon*, 52 Or App 107,

---

[16] After the court sustained Dulcich's objection, the witness told the jury that Hayes Oyster did not sell its business to Frank Dulcich because Hayes was not able to come to terms with Dulcich. On appeal, Hayes argues that it wanted to establish a different factual point—that after Hayes rejected Dulcich's offer, Dulcich's agent allegedly said that he would get Hayes Oyster by other means. That was not, however, the evidence that Hayes identified in response to defendants' objection.

112-13, 627 P2d 1265 (1981) (discussing abandonment defense).

█ The trial court also did not err in giving the instruction to which Hayes assigns error. The instruction told the jurors that, if they found that the Port had given its permission to defendants to take the oyster shell, Hayes would have the burden to prove that the Port did not own the shell. In its conversion case, Hayes was required to prove that it had the right to exercise dominion or control over the oyster shell pile. *B & L Furniture v. Transamerica Ins.*, 257 Or 548, 550, 480 P2d 711 (1971). The instruction to which Hayes assigns error simply reaffirmed that it was Hayes' burden to prove that it had such a right.[17]

Hayes' final assignments of error concern the trial court's grant of summary judgment to Dulcich, Inc., on Hayes' conversion claim and to Pacific Oyster on Hayes' claim of ejectment. On each summary judgment claim, we review to determine whether there are genuine issues of material fact and whether defendant is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

█ Hayes' claim of ejectment against Pacific Oyster was based on the allegation that Pacific Oyster and Pacific Sea Food were "wrongfully withholding" Hayes from possession of the property it had leased from the Port.[18] Hayes reasoned that because the Port had no right to terminate Hayes' earlier lease for the property, Hayes was still entitled to possession. Hayes does not dispute that it had breached its lease with the Port and that its lease ordinarily could be terminated for the breach. Rather, it argues that, because the Port had failed to dredge a channel to its cannery in violation of its obligations under the lease, the Port was also in default and thus had no right to declare Hayes in default.

---

[17] Hayes did not except below or assign error to the trial court's instruction that it was required to prove that "the responsible defendant intentionally exercised control over plaintiff's property which seriously interfered with the plaintiff's rights in the property."

[18] It is not clear why Hayes' appellate claim of error is limited to Pacific Oyster, when its pleading named both Pacific Oyster and Pacific Sea Food.

The difficulty with Hayes' argument is its premise: The lease does not contain a promise that the Port would dredge the channel. Rather, Hayes appears to base its claim that the Port breached its lease on a condition contained in a 1914 deed to the Port's predecessor.[19] Hayes does not explain how an apparently inapposite condition set out in a deed to the Port's predecessor became a promise in Hayes' lease to dredge a channel to its cannery. Because the Port did not breach the terms of its lease, the premise of Hayes' argument fails.[20]

Hayes argues finally that the trial court erred in granting summary judgment on its conversion claim against Dulcich, Inc. Dulcich, Inc., moved for summary judgment because it was merely a holding company. It argued that whatever conversion claims Hayes might have against its subsidiaries, Dulcich, Inc., had done nothing to convert Hayes' oyster shells. In opposition to Dulcich, Inc.'s summary judgment motion, Hayes did not offer any evidence that Dulcich, Inc., had taken any additional shells from Hayes' pile. Rather, Hayes offered evidence from which the jury reasonably could infer that Dulcich, Inc., was more than a passive spectator.

Specifically, Hayes offered the minutes of a Dulcich, Inc., board meeting that refer to a sale of oyster shell to an overseas buyer and a letter written by Frank Dulcich on The Pacific Group letterhead[21] that states that "[i]t is imperative that our shell pile support our seed operation * * *." It also

---

[19] The deed provides, in relevant part: "And, provided, further, that if the said property be not used for any other purpose than the construction and maintenance of a channel over said property for the purposes of navigation, that the same shall consist of a boat channel [of certain dimensions]." It also provides that if the conditions are not met, the property shall revert to the grantors. Hayes' reliance on the deed appears misplaced for at least three reasons. First, by its terms, the deed does not obligate the Port to dredge a channel unless it uses the property for none of the other purposes specified in the deed. Second, the deed appears to contemplate that the channel will run over the property, not to it. Third, if the Port fails to satisfy the conditions set out in the deed, the property reverts to the grantors, not Hayes.

[20] Hayes advances a different basis in its reply brief as to why the trial court erred. Hayes' new argument comes too late. *State v. Stanley*, 153 Or App 16, 21, 955 P2d 764 (1998) (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991)).

[21] Frank Dulcich stated in his deposition that Dulcich, Inc., does business as The Pacific Group.

offered other letters written on The Pacific Group letterhead that would permit a reasonable juror to conclude that Dulcich, Inc., acted in accord with the other defendants in acquiring Hayes' operation, including its shell pile. A juror could reasonably infer from that evidence that Dulcich, Inc., was acting in concert with the other defendants who took Hayes' shell. *See Granewich v. Harding*, 329 Or 47, 55, 985 P2d 788 (1999) (reaffirming that theory of tort liability).

Reversed and remanded as to plaintiff's conversion claim against Dulcich, Inc.; otherwise affirmed.