Argued and submitted October 29, 2009, reversed and remanded March 2, 2011

## Dawn M. MACKS,
*Petitioner,*

*v.*

## DEPARTMENT OF EDUCATION,
*Respondent.*

Department of Education
58105300060810; A139118

250 P3d 394

Elizabeth A. Joffe argued the cause for petitioner. With her on the briefs were Margaret S. Olney and McKanna Bishop Joffe & Arms, LLP.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Wollheim, Presiding Judge, and Sercombe, Judge, and Duncan, Judge.*

DUNCAN, J.

---

* Duncan, J., *vice* Edmonds, P. J.

**DUNCAN, J.**

Petitioner seeks judicial review of an order issued by respondent, the Department of Education, revoking her school bus driver's certificate. The department issued the order pursuant to OAR 581-053-0006(8)(c)(B), which provides that a school bus driver's certificate "shall be suspended or revoked" if the driver has been "convicted of a crime involving * * * [a] threat of violence[.]" The department revoked petitioner's school bus driver's certificate based on petitioner's conviction for telephonic harassment, ORS 166.090, for leaving four unwanted voice messages for Hawkins, a man she had known for over 20 years and with whom she had been romantically involved. The crime of telephonic harassment does not include a threat of violence as an element, but the department has interpreted OAR 581-053-0006(8)(c)(B) to require suspension or revocation of a school bus driver's certificate if the driver has been convicted of a crime the commission of which involved a threat of violence. Thus, the issue before the department was whether the four messages that formed the basis for petitioner's conviction for telephonic harassment involved a threat of violence. Relying on evidence that, after receiving the four messages, Hawkins sought and obtained a civil stalking protective order, the department determined that the messages (and, therefore, petitioner's telephonic harassment conviction) involved a threat of violence and revoked petitioner's school bus driver's certificate.

On review, petitioner makes two assignments of error. First, she assigns error to the department's determination that she was convicted of a crime involving a threat of violence, arguing that the determination is not supported by substantial evidence. Second, she assigns error to the department's decision to revoke, as opposed to suspend, her school bus driver's certificate, arguing that the decision is inconsistent with OAR 581-053-0006(8)(c)(B) and ORS 670.280, which govern the department's revocation authority. For the reasons explained below, we agree with petitioner that the department's order is not supported by substantial evidence and, accordingly, we reverse and remand on petitioner's first assignment of error and do not reach her second assignment of error.

We begin with the facts. Petitioner met Hawkins in 1985, when she was a college student and he was her professor. They became romantically involved and, after Hawkins divorced his wife, lived together for some period of time. Hawkins had children from his marriage, and petitioner developed a close relationship with them.

Petitioner and Hawkins eventually ended their romantic relationship, but they remained friends and saw each other at work. Petitioner began working as a school bus driver in 1989, and Hawkins became her supervisor sometime after that.

In the summer of 2006, when Hawkins was married to his second wife, petitioner and Hawkins resumed their romantic relationship. In February 2007, Hawkins ended the relationship after his wife found out about it. In September 2007, Hawkins resigned from his job while facing disciplinary action, in part because of his relationship with petitioner. The following week, Hawkins contacted the police to report that petitioner had been making unwanted calls to him since he ended their relationship in February. He completed a civil stalking complaint, which a police officer, Schmitz, served on petitioner. After a hearing, a judge dismissed the complaint on the ground that Hawkins had not presented sufficient evidence to support the issuance of a civil stalking protective order. In addition, the judge asked petitioner if she would stop calling Hawkins and she said that she would.

Petitioner did not call Hawkins again until November 2007, when she left him four voice messages. After the fourth message, Hawkins completed a second civil stalking complaint, in which he asserted that petitioner had made "[a]ggressive and unwanted phone calls" and that she had continued to call and leave messages "after several requests to stop and after her promise to [the] judge to cease." Hawkins did not state that petitioner had made any threats of violence in the messages.

In response to the complaint, Schmitz, the officer who had served petitioner with the first stalking complaint, asked Hawkins to come to the police station. Hawkins did

and he played the four messages for Schmitz. Schmitz subsequently contacted petitioner and served her with the second civil stalking complaint, as well as a citation for telephonic harassment. Telephonic harassment is defined by ORS 166.090, which provides, in part:

"(1) A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"* * * * *

"(c) By sending to, or leaving at, the other person's telephone a text message, voice mail or any other message, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone."

As mentioned, telephonic harassment does not include a threat of violence as an element. *Compare* ORS 166.065 (defining the crime of harassment to include, *inter alia*, causing alarm by conveying a telephonic threat to inflict serious physical injury).

Schmitz wrote a report in which he summarized the November messages. The first message was left on November 5, 2007, and "was sarcastic, mocking Hawkins for filing the stalking complaint [in September] and went on to say he didn't really want to be with his wife." The second message was left on November 24, and the third and fourth messages were left one after the other on November 25. Schmitz described the contents of the last three messages as follows:

"During these calls, [petitioner] told Hawkins how she would never trust him again, how the holidays were affecting her and how she had been looking [at] pictures of his children around her house and how it made her cry. She then went on to say she didn't understand why he stayed with his wife and asked that if he chose to leave her, he contact her ([petitioner]). She also made comments about 'a sick part of her' not being able to be without Hawkins and on at least one occasion, she said she didn't know what she was going to do. [Petitioner] also threatened to contact Hawkins's children and 'tell them the truth about him.' "

Schmitz reported that Hawkins told him that he did not know what to do to stop the calls and that he was worried

that petitioner was unstable and might try to hurt him or his wife. "[Hawkins] said [petitioner's] fixation on him and his family, coupled with the holiday season, now caused him concern for their safety and welfare."

On December 5, 2007, after a hearing on the second civil stalking complaint at which both petitioner and Hawkins testified, a judge issued a civil stalking protective order against petitioner. The recording equipment did not work during the hearing, so there is no record of the testimony, arguments, or court's findings regarding the basis for the stalking protective order.

On December 17, 2007, petitioner pleaded guilty to telephonic harassment. She was placed on 18 months' probation and the judgment states that her conviction will be converted to a violation upon successful completion of the probation.

On January 28, 2008, the department sent petitioner a letter stating that it intended to revoke her school bus driver's certificate pursuant to OAR 581-053-0006(8)(c)(B), which, again, provides that a school bus driver's certificate "shall be suspended or revoked" if the driver has been "convicted of a crime involving * * * [a] threat of violence[.]" The letter informed petitioner that, if she wanted to contest the revocation, she had to request a hearing. She did, and on April 7, 2008, a hearings officer conducted a contested case hearing. *See* ORS 183.417 (describing procedure in a contested case hearing). As mentioned, telephonic harassment does not include a threat of violence as an element, but the department has interpreted OAR 581-053-0006(8)(c)(B) to apply to convictions for crimes the commission of which involved a threat of violence. Petitioner did not challenge the department's interpretation of its rule below, and, thus, the issue at the hearing was whether the four November messages that were the basis for petitioner's telephonic harassment conviction involved a threat of violence.[1]

---

[1] In her reply brief, petitioner argues that the department's interpretation of OAR 581-053-0006(8)(c)(B) is inconsistent with ORS 670.280(3), *Teacher Standards and Practices v. Bergerson*, 342 Or 301, 153 P3d 84 (2007), and *Dearborn v. Real Estate Agency*, 334 Or 493, 53 P3d 436 (2002). Because those arguments were not raised below or in the opening brief, we will not address them. *See Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (refusing to address an argument raised for the first time in a reply brief).

The department, which bore the burden of proving the basis for the revocation, ORS 183.450(2), called Hawkins as a witness. The department's representative asked Hawkins if he could recall specifically what petitioner said in the four messages, and Hawkins replied that he could not. Continuing, the representative asked Hawkins if he could recall whether the four messages were threatening, and Hawkins replied that they were not:

> "[Hawkins:] To the best of my recollection, on those four phone calls—four or so phone calls, there's nothing threatening. The only thing that might have been threatening was with my job or something.
>
> "[Department Representative:] But not physical?
>
> "[Hawkins:] I don't believe so."

The department also submitted exhibits, including the second civil stalking complaint, Schmitz's police report, and computer printouts of the case registers for both stalking hearings. As described above, in the second civil stalking complaint, Hawkins stated that petitioner had made "[a]ggressive and unwanted phone calls," but he did not state that the calls involved any threats of violence. Likewise, Schmitz's report describes the November messages and states that petitioner threatened to tell Hawkins's children, who were adults at the time, the truth about him, but does not state that the messages involved any threats of violence.

After the hearing, the hearings officer issued written findings of fact and conclusions of law, which the department later adopted. The department concluded that petitioner's "commission of the crime of telephonic harassment included the threat of violence by [petitioner] against Mr. Hawkins and his family." The department based its conclusion on its finding that the November messages, which were the basis for the telephonic harassment conviction, involved a threat of violence. As described above, there was no direct evidence that the messages involved a threat of violence, but the hearings officer inferred that the messages involved a threat of violence from reactions to the November messages, in particular, the fact that, after receiving the messages, Hawkins sought and obtained a civil stalking protective order against petitioner. As we understand it, the department reasoned as follows: (1) the November messages were the basis for the

second civil stalking complaint and resulting stalking protective order, (2) to be the basis for the complaint and order, the messages must have caused Hawkins reasonable apprehension regarding his personal safety or that of his family, and (3) therefore, the messages must have involved a threat of violence.

■ Petitioner argues that the department's finding that the November messages involved a threat of violence is not supported by substantial evidence. Specifically, she argues that the department erred by relying on the issuance of the second civil stalking complaint and entry of the civil stalking protective order to infer that the messages involved a threat of violence.

■ We review the department's order for substantial evidence. ORS 183.482(8)(c). Substantial evidence exists to support a finding of fact when "the record, viewed as a whole, would permit a reasonable person to make that finding." *Id*. When a factual finding is based on an inference, we assess both the evidentiary basis and the rational basis for the inference. As the Supreme Court has explained:

> "The substantial evidence rule is not entirely dispositive in reviewing findings which embody inferences. An inference has two parts: a primary fact plus a deduction. The evidence directly establishes only the truth of the primary fact or facts from which an inference may be derived therefrom. Rational bases may exist for more than one inference to be drawn from the same primary fact, and the factfinder (*i.e.*, the agency) has the task to decide which one to draw. The court does not substitute its judgment as to which inference should be drawn, but it must review for the existence of a rationale. The rationale is reviewed for soundness, not for conformity to judicial preference. Judicial review of an inference is thus in two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether there is a basis in reason connecting the inference to the facts from which it is derived. It is a twofold review for substantial evidence and, in a sense, for 'substantial reason.'"

*City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981).

■ When conducting "substantial reason" review, we review the reasoning set forth in the order itself. *See Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996) (review for substantial reason is based on the order itself, not our independent review of the record); *Castro v. Board of Parole*, 232 Or App 75, 85-86, 220 P3d 772 (2009) ("Our duty is to evaluate the board's logic, not to supply it.").

Here, the department found that, "Based on the telephone messages, a civil stalking order was * * * issued to Mr. Hawkins against [petitioner]." Under ORS 30.866, a person may obtain a stalking protective order against another person if the other person has engaged in repeated and unwanted contacts that have caused reasonable alarm or coercion and reasonable apprehension regarding personal safety. That statute provides, in part:

> "(1) A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:
>
> "(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;
>
> "(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and
>
> "(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household.
>
> "* * * * *
>
> "(6) An action under this section must be commenced within two years of the conduct giving rise to the claim."

As mentioned, the department inferred that the November messages involved a threat of violence because, in the department's view, they resulted in the second civil stalking complaint and the stalking protective order. As petitioner argues, the department's inference works only if the November messages were the sole basis for the stalking

complaint and order. If the evidence in support of the stalking complaint and order was not limited to the November messages, the department could not find that the messages, as opposed to other contacts, caused Hawkins reasonable apprehension regarding his personal safety or that of his family. But, as petitioner argues, a civil stalking protective order can be based on contacts that occurred within two years of the filing of the stalking complaint, ORS 30.866(6), and, therefore, the stalking protective order could have been based on contacts other than the November messages, and there was no evidence before the department to indicate that the stalking protective order was based solely on the November messages. Indeed, the evidence before the department was to the contrary. The evidence before the department included Schmitz's police report, which described the content of the November messages. As described by Schmitz, the messages could not be the basis for a stalking protective order because they are communicative contacts and they do not constitute an imminent threat of serious physical harm. *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).

 Under *Rangel*, a court cannot enter a stalking protective order against a person based on the person's speech, which is protected by Article I, section 8, of the Oregon Constitution, unless the speech constitutes a "threat." *Id*. A "threat" is "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id*. Threats do not include "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985). *See, e.g., Sparks v. Deveny*, 221 Or App 283, 289, 189 P3d 1268 (2008) ("Without a doubt, respondent's relentless contact with petitioner and her family by sending her cards and letters and repeatedly calling her home was boorish, obsessive, and troubling; however, those expressive contacts do not unequivocally equate with a threat that would instill in a reasonable person a fear of imminent and serious personal violence as *Rangel* requires.").

Here, there was no evidence before the department that the November messages contained any unequivocal

threats of imminent serious personal violence that were objectively likely to be followed by unlawful acts. While they may have alarmed Hawkins, there was no evidence that they were the type of statements that, under *Rangel*, could be the basis for a stalking protective order. Assuming, as we must, that the stalking protective order was validly entered, it had to be based on contacts other than the November messages. Therefore, it was error for the department to find that the November messages were the basis for the civil stalking protective order and to infer, from the entry of the civil stalking protective order, that the November calls—as opposed to other contacts—involved a threat of violence. Because the department's order was predicated on that inference, the order is not supported by substantial evidence.[2]

Reversed and remanded.

---

[2] Because we reverse on that basis, we do not address petitioner's additional arguments.